CHAS. KAASE v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided January 17, 1906.

**Carrier—Passenger—Termination of Transit.**

Evidence, in case of a passenger remaining asleep on the arrival of train at terminus and claimed to have been mistreated by a brakeman in waking and putting him off car, considered and held to support a verdict for defendant, on the ground that the relation of carrier had ended and that no unreasonable force was used.

Error from the District Court of Bell County. Tried below before Hon. John M. Furman.

*Stanton Allen* and *Pendleton, Ferguson & Durrett,* for plaintiff in error.—The verdict of the jury is contrary to the law and the evidence in the following particulars to wit: The undisputed evidence shows that the plaintiff was a passenger for hire in the defendant's car, that while the relation existed the brakeman of defendant employed in the operation of the train upon which plaintiff was a passenger, assaulted and injured plaintiff; and under the undisputed facts in the case the plaintiff was entitled to a verdict and judgment for damages. Liability of carrier for assault upon passenger by servant. Gulf, C. & S. F. Ry. Co. v. Conder, 58 S. W., 59, 23 Texas Civ. App., 490; Dillingham v. Anthony, 11 S. W., 137; Houston & T. C. Ry. Co. v. Washington, 30 S. W., 720; St. Louis S. W. Ry. Co. v. Franklin, 44 S. W., 702; 6 Cyc., 600, and notes 77 to 90; White v. Norfolk & S. Ry. Co. (N. C.), 44 Am. St. Rep., 489, citing 41 Ib., 885 and 42 Ib., 738. Who are passengers? Texas & P. Ry. Co. v. Miller, 79 Texas, 84; St. Louis, A. & T. Ry. Co. v. Finley, 79 Texas, 85; Texas & P. Ry. Co. v. Dick, 63 S. W., 895; Houston & T. C. Ry. Co. v. Batchelor, 73 S. W., 981; 6 Cyc., 536-542, and notes.

At the end of the journey the relation of carrier and passenger continues until the passenger has had a reasonable opportunity to depart from the train or car in safety. If employes know that passenger has not left car, announcing station not sufficient. Texas & P. Ry. Co. v. Dick, supra; Houston & T. C. Ry. Co. v. Batchelor, supra; 6 Cyc., 541, and notes; Price v. St. Louis, I. M. & S. Ry. Co., 88 S. W., 576; St. Louis S. W. Ry. Co. v. Martin, 63 S. W. Rep., 1089; Gulf, C. & S. F. Ry. Co. v. Matthews, 73 S. W. Rep., 413; Louisville & N. Ry. Co. v. Harman (Ky.), 64 S. W. Rep., 640.

The charge is inapplicable to and unsupported by the facts in the case in this, that there is no evidence indicating or raising the issue that the plaintiff was or at any time became a trespasser. Same authorities.

The question of the carrier affording passengers reasonable time to enter and depart safely from its train and of the duty of passenger to exercise ordinary care in entering and departing from trains in accordance with the rules and regulations of the railway company was not raised by the facts in this case and the court erred in submitting the same to the jury. Same authorities.

The charge submits to the jury whether the relation of carrier and passenger had ceased to exist between plaintiff and defendant while the undisputed facts in the case show that the said relation had not ceased and could not have terminated at the time of the alleged assault and injury. Same authorities, and also, that plaintiff was not a trespasser. Fanning v. St. Louis, etc., Ry. Co., 86 S. W. Rep., 354; Texas Midland Ry. Co. v. Terry, 65 S. W. Rep., 697; St. Louis S. W. Ry. Co. v. Martin, 63 S. W. Rep., 1089; Gulf, C. & S. F. Ry. Co. v. Matthews, 73 S. W. Rep., 413; Price v. St. Louis, I. M. & S. Ry. Co., 88 S. W. Rep., 576, and authorites cited.

*J. W. Terry* and *A. H. Culwell,* for defendant in error.—The evidence in this case shows conclusively that this passenger was carried safely from the initial point to the place of destination, that a reasonably sufficient notice of the station of Temple was given, and that a reasonable opportunity for this passenger to disembark from the train was afforded, and there was no further contractual relationship existing. Fanning v. St. Louis Southwestern Ry. Co., 12 Texas Ct. Rep., 689; Texas & P. Ry. Co. v. Alexander, 13 Texas Civ. App., 314; Houston & T. C. Ry. Co. v. Cohn, 22 Texas Civ. App., 12; St. Louis S. W. Ry. Co. v. Rickets, 54 S. W. Rep., 1090, 22 Texas Civ. App., 518.

The plaintiff in error having neglected to get off of the train at Temple after its arrival had been announced, and the train stopped, he became a trespasser, and defendant in error owed to him no duty except not to willfully injure him. Houston & T. C. Ry. Co. v. Cohn, 22 Texas Civ. App., 13, and authorites heretofore cited.

KEY, ASSOCIATE JUSTICE.—Charles Kaase brought this suit against defendant railway company for damages. He alleged in his petition that while he was a passenger on the defendant's railroad, one of the defendant's employes committed an assault upon him. There was a jury trial, resulting in a verdict and judgment for the defendant, and the plaintiff has brought the case up by writ of error.

The first assignment of error assails the verdict and asserts that the undisputed evidence shows that the plaintiff was a passenger on defendant's train, and that while that relation existed, a brakeman employed by the defendant in the operation of the train, committed an assault upon him. The undisputed testimony shows that the plaintiff boarded the train in question at Lampasas, and became a passenger by virtue of a ticket, which entitled him to transportation to Temple. Temple was the final destination of the train, and when it reached that place and all the other passengers got off, the plaintiff, who was asleep in a seat in the chair car, did not get off. This was between ten and twelve o'clock at night.

The plaintiff testified that he had lost sleep for several nights; that he went to sleep before the train reached Temple, and did not wake up until he was jerked out of his seat by the brakeman, who placed nippers or handcuffs on one of his wrists.

We have not undertaken to set out his testimony in full, because it may be conceded that it was sufficient to support a verdict in his favor, if the jury had given him credence and decided the case for him. But the conductor in charge of the train testified that when it reached Temple he passed through the car and announced that station in a distinct voice; that he assisted the passengers off, remaining there for at least five minutes after the train stopped at the depot, and until he supposed all the passengers were off, when he left for his home.

J. H. Ragsdale, the brakeman, testified as follows: "I was brakeman on the train that Mr. Kaase, the plaintiff, was on the night he complains of. My duties are to protect the rear end of my train, and keep any other train from running into the rear end. I have no control or supervision over the passengers on the train. The conductor is in charge of that part of the work. The destination of that train that night was Temple. I do not know whether or not the station was called before going in. I did not undertake to get plaintiff out of the car until I had done all my work, and I passed by and heard the car man making a fuss in there and I stepped in the car. I was off duty at that time. When my train got to Temple, I took off my lights and put them in the train box, which took me about five minutes after we got in there, and then I took off my cap and put on my hat and started down to the Harvey House. I had nothing more to do with that train when I had done what I have stated. I had no further connection with that train as brakeman. My duties to the railroad company had all been performed, and the services for which I was employed had all been done. I did not know the destination of plaintiff. I thought he wanted to go through somewhere on the main line or on the Katy. The first thing that attracted my attention back to the car after I had finished my work was that I heard the car man trying to wake plaintiff up. At that time the car had been turned over to the car cleaner. When I heard him trying to wake the passenger up, I went in the car. I shook plaintiff and raised him up in the seat, and let him sit back down in it, and then I went out and started on back towards home, and Mr. Jordan the car cleaner went on through the train and put the rest of the lights out, and was coming back, and as a personal favor to him, I went back up there, and decided that I would get plaintiff out of the car, so that he could make his connection, if he was going north or south. My motive in going back to the plaintiff the second time was a personal favor to him, to keep him from missing his connections. I didn't know where he was going and thought he might miss his connection. When I went back there I did not have any nippers. I never carry nippers. I did have a car seal, which is made of tin, and maybe a quarter of an inch wide. It is a piece of tin that they run through the lock or door on a freight car to seal it up. I picked that up, I put that around plaintiff's wrist and pinched it, and he rose up in his seat. I did that to wake him up. I had tried every other way and could not wake him. He got up out of his seat and asked me what I was doing,

and I said I was waking him up. He said take those things off of me, and I took them off and I said 'Are you awake?' He said 'Yes,' and I went out of the car and he followed me out of the car. There was no one in the car but the plaintiff, myself and the car cleaner Jordan. I weigh one hundred and sixty-five pounds, and am five feet five and a half inches tall. According to plaintiff's statement, he is a larger man than I am. I had no intention of doing plaintiff any personal violence, and had no desire to injure him in any way. I was doing that as J. H. Ragsdale, and not as a brakeman of defendant.

"I did not twist the car seal around plaintiff's wrist, I just pinched it. I did just what I testified on direct examination and that is all there was to it. I do not have anything to do with calling stations. Sometimes I do as an assistance to the conductor. A brakeman is not required to assist passengers off the train, but we do it sometimes. It is customary to see that everybody gets out of the car, and I am not going to let a man sleep, if I can wake him up, but it is not my duty to go in there and wake him up. It is the general custom to see that all passengers get out when we get to terminals, and I heard the car cleaner in the car and I went in to help him. The car cleaner did not take any part in waking plaintiff up. The car cleaner was right there at the seat when I woke him up. I got the car seal out in the yard and carried it in the car with me.

"It was the second trip that I carried the car seal with me, after I had been in there and tried to wake plaintiff up by shaking him. I did not curse plaintiff, or use any profane language towards him."

The employe referred to as the car cleaner testified for the defendant, and substantially corroborated the brakeman as to what was done by the brakeman to get the plaintiff off of the train. He also stated that before the brakeman came back on the car, he had endeavored, without success, to wake the plaintiff by shaking and pushing him. He stated that he did this twice before the brakeman came to his assistance, and that the train had been there ample time for the plaintiff to get off before he attempted to wake him the first time. The plaintiff denied being drunk, but admitted that he had taken several drinks of intoxicating liquor before he left Lampasas.

We are of the opinion that the testimony submitted by the defendant was such as justified the jury in finding that the train had been there a reasonable and sufficient length of time for passengers to get off, and that on account of being intoxicated, or for some other reason, the plaintiff was in such condition as that it was necessary for the defendant's employes to resort to some other means than those usually employed to awaken a sleeping person, in order to get the plaintiff off of the train; and that excessive force was not used for that purpose. In other words, we hold that the testimony offered by the defendant supports a finding that the plaintiff was not, at the time he alleges he was assaulted, a passenger. But, if it be conceded that that relation had not terminated, and he was a passenger at the time referred to, we are of the opinion that the verdict should be upheld upon the theory that no unlawful assault was committed. The train had reached its destination; and plaintiff, though asleep, and without fault, had no right to remain on the train throughout the night; and

the defendant's employes had the right to resort to whatever means were reasonably necessary to awaken him and get him off the train; and if the brakeman and car cleaner told the truth about the matter, we are not prepared to say that the means resorted to were unreasonable or unnecessary.

The other assignments of error assail the charge of the court, mainly upon the contention that the undisputed testimony shows that the plaintiff was entitled to recover; and that whether or not he was a passenger at the time of the alleged assault should not have been submitted to the jury. What we have already said disposes of that objection. The other criticisms addressed to the charge are not regarded as tenable. We hold that the charge, with fairness and reasonable accuracy, submitted the case to the jury, and that the verdict for the defendant is supported by testimony.

No error has been shown and the judgment is affirmed.

*Affirmed.*